## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JOAO MONTEIRO, | ) | |
| | ) | Case No. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SUSAN CORMIER, TREVOR | ) | |
| LEFEBVRE, DANIEL MULLEN, TINA | ) | |
| GONCALVES, CITY OF PAWTUCKET, | ) | |
| and TAMARA WONG, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, JOAO MONTEIRO, by his attorney WILLIAM DEVINE[1], complains

of SUSAN CORMIER, TREVOR LEFEBVRE, DANIEL MULLEN, TINA

GONCALVES, CITY OF PAWTUCKET, and TAMARA WONG as follows:

## INTRODUCTION

1.     Plaintiff, Joao Monteiro, is a legal immigrant from Cape Verde. He has

lived in the United States for decades and worked hard all of his life.

2.     In 2020, Plaintiff was wrongly accused, framed, and arrested for

murder related to the death of a 10 year-old girl in 1988.

3.     Plaintiff had absolutely nothing to do with the murder and had never

known or interacted with the girl.

---

[1] Plaintiff intends to file along with his Complaint, motions for admission *pro hac
vice* for the appearance of attorneys from Loevy & Loevy.

4. There was no legitimate evidence connecting Plaintiff to the girl's death.

5. Instead, Defendants fabricated evidence in order to "solve" the 32 years-old "cold case" in order to gain notoriety.

6. In particular, Defendants fabricated false statements from Plaintiff that relied on taking advantage of an obvious language barrier to make it falsely seem as if Plaintiff lived near the victim around the time that she died. Defendants further fabricated purported DNA evidence, and misrepresented it in order to obtain an arrest warrant.

7. To get away with this misconduct, Defendants bypassed standard procedures by excluding representatives of the Rhode Island Attorney General's Office ("AGO") from the arrest process and by not seeking a grand jury indictment as the basis for an arrest.

8. When members of the AGO did finally have access to the "evidence" developed by Defendants, they dismissed the charges against Plaintiff by refusing to take the case before a grand jury.

9. The AGO's dismissal did not happen until after Plaintiff's life was forever damaged.

10. Defendants sought publicity for arresting Plaintiff, which caused Plaintiff to lose his job that he held for 15 years and to become homeless. It also caused Plaintiff's reputation to be forever tarnished and left Plaintiff forever fearful that his life and liberty could, at any moment, be wrongly taken from him by police.

11.     Plaintiff seeks justice through this action to hold those responsible accountable for their misconduct.

## JURISDICTION AND VENUE

12.     This action is brought under 42 U.S.C. § 1983 and Rhode Island law to redress Defendants' misconduct and deprivation of Plaintiff's rights secured by the United States Constitution.

13.     This Court has jurisdiction of Plaintiff's federal claims under 28 U.S.C. § 1331 and supplemental jurisdiction of his state-law claims under 28 U.S.C. § 1367.

14.     Venue is proper under 28 U.S.C. § 1391(b). The events and omissions giving rise to Plaintiff's claims occurred within this judicial district. Moreover, on information and belief, Defendants reside in Rhode Island and are subject to the personal jurisdiction of the courts in this judicial district.

## PARTIES

15.     Plaintiff Joao Monteiro was a hard-working man who has four children. Mr. Monteiro worked loading trucks at Cintas from 2004 until he was wrongly arrested by Defendants. Since the wrongful arrest, Plaintiff has been unable to work because of the trauma from the wrongful arrest—his life was upended by the wrongful arrest.

16.     Defendants Susan Cormier, Trevor Lefebvre, Daniel Mullen, and Tina Goncalves, (collectively "Pawtucket Defendants") were Pawtucket police officers at the time of the events giving rise to this matter. All of these Defendants were responsible for investigating crimes, including the possible crime at issue in this

case, and/or for supervising other police officer Defendants. They committed, facilitated, and approved the constitutional violations at issue in this case.

17. Defendant Tamara Wong was employed by the Rhode Island Department of Health. She supplied DNA evidence related to this case that was either manipulated by the Pawtucket Defendants to pursue the wrongful arrest of Plaintiff or that was intentionally fabricated to falsely implicate Plaintiff.

18. Defendant City of Pawtucket, Rhode Island is a municipality of the State of Rhode Island, which oversees the Pawtucket Police Department. The Pawtucket Defendants referenced above were employed by the City of Pawtucket or were acting as agents of the City of Pawtucket, and/or the Pawtucket Police Department while conducting the investigation described in this Complaint. Defendant City of Pawtucket is responsible for the policies and practices of the Pawtucket Police Department that were implemented by Defendants in this case. Finally, Defendant City of Pawtucket is responsible under Rhode Island law for any judgment entered against Defendants.

19. At all times relevant to the events described in this Complaint, each of the Defendants identified above acted under color of law, within the scope of his employment, and as an investigator.

20. Each of the Defendants is sued in his/her individual capacity, unless otherwise noted.

# FACTS

## The Unsolved Murder

21.     A ten year-old girl disappeared near her home on January 6, 1988. Her body was found washed up on a beach approximately 54 days later.

22.     Local police and the FBI have never solved how or why the girl died.

23.     When the girl's body was recovered, there were purportedly traces of blood found on her pants.

24.     On or before 1996, unknown DNA analysis had been conducted on that blood.

25.     Plaintiff had absolutely nothing to do with the girl's death.

## Defendants' "Cold Case" "Investigation"

26.     In August 2018 the Pawtucket Defendants reopened the investigation.

27.     The Pawtucket Defendants obtained additional DNA analysis of the blood from the girl's pants.

28.     The DNA analysis did not produce sufficient DNA to provide a match to any DNA profile from a known person.

29.     Regardless, the Pawtucket Defendants used the DNA to chart a convoluted path to frame Plaintiff.

30.     The only person that the DNA sample indicated a potential connection to was Plaintiff's son. The DNA sample did not directly implicate anyone, and Plaintiff's son was not born until five years after the girl died.

31.     The DNA profile that the Pawtucket Defendants developed could have been used to indicate a potential connection with any relative of Plaintiff's son through his paternal line, including cousins and an uncle. This DNA profile potentially pointed to any number of men who may have had some connection to the area.

32.     For some unknown reason, the Pawtucket Defendants decided to target Plaintiff, an innocent man.

33.     Plaintiff was a hard-working man who had held his job for 15 years, and lived a quiet life.

34.     The Pawtucket Defendants started following Plaintiff around and manufacturing evidence that falsely made Plaintiff appear to be acting suspiciously. None of this evidence was true, and it was used to justify Plaintiff's wrongful arrest.

35.     To be clear, Plaintiff was just living his life as any other working person.

36.     Moreover, the Pawtucket Defendants required Plaintiff to submit to DNA analysis and an interrogation.

37.     Because he was completely innocent, Plaintiff cooperated at every step of the way.

38.     A DNA buccal swab was taken from Plaintiff.

39.     Defendants Cormier and Lefebvre interrogated Plaintiff even though it was obvious that Plaintiff could not speak English well enough to understand the interrogation. Plaintiff speaks Cape Verdean Creole as his native language.

Defendants were well aware of Plaintiff's language barrier and could have easily involved an interpreter in their communications with him, but deliberately denied Plaintiff access to a person who could translate or communicate with him in a language he understood.

40.     Instead, Defendants Cormier and Lefebvre either used the obvious language barrier to fabricate incriminating "admissions" from Plaintiff and/or they fabricated his "admissions" directly. These false "admissions" included purported, and false, statements that Plaintiff lived near the girl when she died.

41.     The Pawtucket Defendants used this fabricated evidence to wrongly arrest and seek the prosecution of Plaintiff.

42.     Despite the Pawtucket Defendants' efforts to falsify evidence and exploit the language barrier, Plaintiff honestly denied any knowledge about what happened to the girl.

43.     The Pawtucket Defendants then set about fabricating misleading DNA evidence.

44.     They utilized Defendant Wong to accomplish the falsification of this evidence.

45.     The Pawtucket Defendants either misrepresented the findings of Defendant Wong's analysis and/or Defendant Wong participated in the misrepresentation.

46.     Defendant Wong never truly concluded that the DNA found in the girl's pants was a match with Plaintiff's DNA sample.

47.     Rather, the DNA evidence supported only that any of Plaintiff's son's relatives through his paternal genetic line could have been a match.

48.     Despite the fact that the DNA evidence did not point to Plaintiff's guilt, in an effort to obtain Plaintiff's arrest, the Pawtucket Defendants and/or Defendant Wong falsely asserted that the DNA evidence was a match to Plaintiff's DNA.

**Defendants Bypassed Prosecutors to Secure Plaintiff's Wrongful Arrest**

49.     The typical procedure for proceeding in a murder case in Rhode Island is for prosecutors from the AGO to be included in the investigation decisions and/or the decisions about whether to proceed to a grand jury to obtain a murder indictment.

50.     Because the Pawtucket Defendants knew that any objective review of their work would reveal their misconduct and fabrication of evidence, they intentionally bypassed prosecutors and sought Plaintiff's arrest on their own.

51.     In fact, when AGO prosecutors finally saw the "evidence" that Defendants developed, about a half-year after Plaintiff's arrest, prosecutors promptly dismissed all charges against Plaintiff and refused to take the case to a grand jury.

52.     Defendants bypassed prosecutors to seek Plaintiff's wrongful arrest, in part, because Defendant Cormier wanted publicity for solving "cold cases."

53.     Defendant Cormier was a media hound who frequently issued press releases in order to be in the limelight (as she did in this case).

8

54.     For instance, Defendant Cormier and other Pawtucket Defendants created a playing-card deck of 52 cold cases that she proclaimed to the media that she was personally going to solve.

55.     In this case, Defendant Cormier held a press conference to publicly announce Plaintiff's wrongful arrest—warning other, potentially innocent, people that "we are coming for you."

56.     Defendants Cormier and Goncalves also publicly and falsely proclaimed that there was a DNA match between the blood found in the girl's pants and Plaintiff.

57.     In addition, Defendant Cormier conducted a weekly media spotlight about her "cold cases," highlighting one case a week for a year.

## Plaintiff's Damages

58.     After Plaintiff's wrongful arrest, Plaintiff's life fell apart.

59.     As a result of Defendants' misconduct, Plaintiff lost his job that he had held for fifteen years.

60.     As a result of Defendants' misconduct, Plaintiff lost his residence.

61.     As a result of Defendants' misconduct, Plaintiff suffered irreversible loses of his reputation.

62.     As a result of Defendants' misconduct, Plaintiff suffered severe emotional distress and substantial pain and suffering, which ultimately led to his inability to work and function.  Since then, Plaintiff has been unable to resume a normal life because of the trauma he suffered.

63.     Plaintiff spent every day for six months, and since then, fearing police and being aware that at a police officer's whim he could be wrongly arrested and possibly imprisoned for the rest of his life for something that he did not do.

## COUNT I
## 42 U.S.C. § 1983 – Federal Malicious Prosecution

64.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

65.     In the manner described above, Defendants, acting as investigators, individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so, and/or in spite of the fact that they knew Plaintiff was innocent.

66.     In doing so, Defendants caused Plaintiff to be unreasonably seized without probable cause and deprived of his liberty, in violation of Plaintiff's rights secured by the Fourth and Fourteenth Amendments.

67.     The false judicial proceedings against Plaintiff were instituted and continued maliciously, resulting in injury.

68.     Defendants deprived Plaintiff of fair state criminal proceedings, including the chance to defend himself during those proceedings, resulting in a deprivation of his liberty. Rhode Island law does not provide an adequate state-law tort remedy to redress that harm.

69. In addition, Defendants subjected Plaintiff to arbitrary governmental action that shocks the conscience in that Plaintiff was deliberately and intentionally framed for a crime of which he was totally innocent, through Defendants' fabrication and suppression of evidence.

70. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

71. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

72. The judicial proceedings against Plaintiff were terminated in his favor, in a manner indicative of his innocence.

73. The Pawtucket Defendants' misconduct described in this Count was undertaken pursuant to the policies, practices, and customs of Defendant City of Pawtucket, and by Defendants who were final policymakers for Defendant City of Pawtucket, in the manner more fully described above.

74. Plaintiff's wrongful conviction further resulted from the failure to supervise and train Pawtucket police officers regarding the proper investigation of alleged crimes. The City's failure to supervise and train its officers showed deliberate indifference to the risk that an innocent person like Plaintiff would be arrested without probable cause.

75.     In addition, the Pawtucket Police Department encouraged its employees to lead investigations without oversight from supervisors and/or prosecutors who would otherwise ensure that wrongful arrests would not occur.

76.     At all times relevant to the events described in this Complaint and for a period of time prior thereto, Defendant City of Pawtucket promulgated rules, regulations, policies, and procedures governing the development of evidence, witness interviews, questioning of criminal suspects, in-court testimony, preparation and presentation of witness testimony, and training, supervision, and discipline of employees and agents of the City of Pawtucket, including employees and agents of the Pawtucket Police Department.

77.     These rules, regulations, policies, and procedures were implemented by employees and agents of Defendant City of Pawtucket, including the Defendants, who were responsible for conducting investigations of crimes in and around Pawtucket, Rhode Island.

78.     In addition, at all times relevant to the events described in this Complaint and for a period of time prior thereto, Defendant City of Pawtucket had notice of a widespread practice by its officers and agents under which individuals suspected of criminal activity, such as Plaintiff, were routinely were subjected to criminal proceedings based on false evidence, and were deprived of their liberty without probable cause, such that individuals, in particular people of color, were routinely implicated in crimes to which they had no connection and for which there was scant evidence to suggest that they were involved. For instance, Pawtucket

police officers were sued: (1) for unlawfully handcuffing, arresting, and detaining a 13 year-old Black girl, Tre'sur Johnson, an honors middle school student in June 2019; (2) for false arrest by Carlton Vose in 2019; (3) for illegal arrest and imprisonment by John Miner in 2015; (4) for unlawful detention in 2014 of Eldominic Ramsey, a Black man; (5) for false arrest and imprisonment in *Sirois v. Heureux*, No. 14-472 S (D. R.I.) stemming from an incident in 2011. In addition, Defendant City of Pawtucket had notice of the widespread practice of its officers to deprive citizens of their rights, including: (1) a Pawtucket police officer was charged with assaulting an elderly person in 2020; (2) Pawtucket police officer Boudreault used excessive force on a 14 year-old student in 2015; (3) the City of Pawtucket settled a lawsuit based on the use of excessive deadly force against a mentally ill man, Jason Swift, in 2008. Finally, the City of Pawtucket, knowing of its serious police misconduct problem has repeatedly violated, and been sued for violating, Rhode Island's public records law in order to shield its woeful police misconduct issues.

79.     These widespread practices were allowed to flourish because the leaders, supervisors, and policymakers of Defendant City of Pawtucket directly encouraged and were thereby the moving force behind the very type of misconduct at issue by failing to adequately train, supervise, and discipline their officers, agents, and employees who withheld material evidence, fabricated false evidence and witness testimony, and pursued wrongful arrests and prosecutions.

80.     The above-described widespread practices, which were so well settled as to constitute the *de facto* policy of the City of Pawtucket, were allowed to exist because municipal policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

81.     The misconduct described in this Count was undertaken under the policy and practices of Defendant City of Pawtucket in that the constitutional violations committed against Plaintiff were committed with the knowledge or approval of persons with final policymaking authority for the City of Pawtucket and the Pawtucket Police Department, or were actually committed by persons with such final policymaking authority.

82.     Defendant Goncalves was chief of the Pawtucket Police Department in 2019 and the final policymaker for the Pawtucket Police Department as authorized by the City of Pawtucket.

83.     As police chief, Defendant Goncalves was responsible for all the policies, practices, and customs of the department.

84.     At the time of the investigation at issue here, Defendant Goncalves and/or Defendant Mullens failed to supervise offices in the Pawtucket Police Department.

85.     Had Pawtucket police officers been properly supervised, Defendants would not have fabricated evidence to falsely claim probable cause.

86.     The policies, practices, and customs set forth above were the moving force behind the numerous constitutional violations in this case and directly and

proximately caused Plaintiff to suffer the grievous and permanent injuries and damages set forth above.

87.     Plaintiff's injuries were caused by Defendants, many of whom were officers, agents, and employees of the City of Pawtucket, and the Pawtucket Police Department including but not limited to the individually named Pawtucket Police Defendants, who acted pursuant to the policies, practices, and customs set forth above in engaging in the misconduct described in this Count.

## COUNT II
### 42 U.S.C. § 1983 – Arrest without Probable Cause

88.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

89.     Defendants arrested Plaintiff based on the false evidence that they fabricated.

90.     Defendants did not have probable cause to perform the arrest on Plaintiff.

91.     Plaintiff was harmed by Defendant's arrest without probable cause.

92.     The Pawtucket Defendants' misconduct described in this Count was undertaken pursuant to the policies, practices, and customs of Defendant City of Pawtucket, and by Defendants who were final policymakers for Defendant City of Pawtucket, in the manner more fully described above.

## COUNT III
### 42 U.S.C. § 1983 – Equal Protection

93.     Each of the Paragraphs of this Complaint is incorporated as if fully

stated herein.

94.     In the manner described in this Complaint, Defendants violated
Plaintiff's constitutional rights intentionally subjecting him to unlawful, unequal
treatment on the basis of his race and/or ethnicity in violation of the Fourteenth
Amendment of the United States Constitution.

95.     Defendants' misconduct created discriminatory effect by targeting
Plaintiff for police action based on his race, ethnicity and/or national origin.

96.     Plaintiff has dark complexion and is of Cape Verdean ancestry, and
but for his race, ethnicity, and/or national origin, Defendants would not have
targeted him for unlawful arrest, imprisonment, and/or malicious prosecution based
on the flimsy evidence it had.

97.     The misconduct described in this Count was objectively unreasonable
and was undertaken intentionally with willful indifference to Plaintiff's
constitutional rights.

98.     The Pawtucket Defendants' misconduct described in this Count was
undertaken pursuant to the policies, practices, and customs of Defendant City of
Pawtucket, and by Defendants who were final policymakers for Defendant City of
Pawtucket, in the manner more fully described above.

**COUNT IV**
**42 U.S.C. § 1983 – Conspiracy to Deprive Constitutional Rights**

99.     Plaintiff incorporates each paragraph of this Complaint as if fully
restated here.

100.     Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to frame Plaintiff for murder, a crime he did not commit, and thereby to deprive him of his constitutional rights, all as described in the various paragraphs of this Complaint.

101.     In so doing, these co-conspirators conspired to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of these rights.

102.     In furthering this conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

103.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

104.     As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

105.     The Pawtucket Defendants' misconduct described in this Count was undertaken pursuant to the policies, practices, and customs of Defendant City of Pawtucket, and by Defendants who were final policymakers for Defendant City of Pawtucket, in the manner more fully described above.

## COUNT V
## 42 U.S.C. § 1983 – Failure to Intervene

106.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

107.    In the manner described above, during the constitutional violations described herein, one or more Defendants stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the opportunity to do so.

108.    As a result of Defendants' failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered pain and injury, as well as emotional distress and permanent physical damage. These Defendants had ample, reasonable opportunities to prevent this harm but failed to do so.

109.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

110.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

111.    The Pawtucket Defendants' misconduct described in this Count was undertaken under the policies, practices, and customs of Defendant City of Pawtucket, and by Defendants who were final policymakers for Defendant City of Pawtucket, in the manner more fully described above.

## COUNT VI
## State Law – False Arrest/Imprisonment

112.  Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

113.  Defendants intended to confine Plaintiff and/or restrict his freedom from restraint of movement.

114.  Plaintiff was conscious of the confinement and/or restrict his freedom from restraint of movement.

115.  Plaintiff did not consent to the confinement and/or restrict his freedom from restraint of movement.

116.  Plaintiff's confinement and/or restriction on his freedom from restraint of movement was not otherwise privileged.

117.  Plaintiff was detained and/or his freedom from restraint of movement was restricted without legal justification.

## COUNT VII
## State Law – Malicious Prosecution

118.  Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

119.  Defendants commenced a criminal case against Plaintiff.

120.  This criminal case lacked probable cause to bring such a proceeding.

121.  Defendants maliciously commenced the criminal case against Plaintiff.

122.  The criminal case against Plaintiff closed in Plaintiff's favor.

## COUNT VIII
## State Law - Intentional Infliction of Emotional Distress

123.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

124.    As a proximate result of the initiation of the prosecution of Plaintiff for the murder without probable cause and with malice by defendants, Plaintiff suffered severe emotional distress.

125.    The acts and omissions of defendants in initiating the prosecution of Plaintiff was made without probable cause that was intentional or in reckless disregard of causing emotional distress.

126.    Fabricating evidence in order to arrest an innocent man is extreme and outrageous conduct, beyond all possible bounds of decency and utterly intolerable in a civilized community.

127.    The defendants' acts and omissions caused Plaintiff to suffer severe emotional distress of a nature that no reasonable person could be expected to endure as described above.

128.    These actions constitute the tort of intentional infliction of emotional distress under Rhode Island law.

129.    As a result of the Defendants' intentional infliction of emotional distress, Plaintiff has suffered damages as described above.

130.    Defendants are liable to the Plaintiff for injuries and damages resulting from the fact that by their acts and omissions alleged herein, they intentionally inflicted emotional distress upon the Plaintiff.

## COUNT IX
## State-Law Claim – Slander

131.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

132.    Defendants Cormier and Goncalves made false and defamatory statements concerning Plaintiff.

133.    These defamatory statements were unprivileged communications to a third party.

134.    Defendants Cormier and Goncalves were at least negligent in making the false and defamatory statements.

135.    The false and defamatory statements caused Plaintiff damages.

136.    Defendants Cormier and Goncalves are liable to the Plaintiff for injuries and damages resulting from the fact that by their acts and omissions alleged herein, committed slander upon the Plaintiff.

## COUNT X
## State-Law Claim – Indemnification

137.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

138.    Rhode Island law provides that public entities are to pay tort judgments for which employees are liable within the scope of their employment activities.

139.    The Pawtucket Defendants were employees, members, and agents of the City of Pawtucket, acting at all relevant times within the scope of their employment in committing the misconduct described herein.

WHEREFORE, Plaintiff, JOAO MONTEIRO, respectfully requests that this Court enter a judgment in his favor and against Defendants SUSAN CORMIER, TREVOR LEFEBVRE, DANIEL MULLEN, TINA GONCALVES, CITY OF PAWTUCKET, and TAMARA WONG, awarding compensatory damages, attorneys' fees and costs against each Defendant, punitive damages against each of the individual Defendants, and any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff, JOAO MONTEIRO, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED,

JOAO MONTEIRO

BY:    /s/ William Devine
       *One of Plaintiff's Attorneys*

William Devine
D'AMICO BURCHFIELD, LLP
536 Atwells Avenue
Providence, RI 02909
(401) 490-4803
WVD@dblawri.com