IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JOAO MONTEIRO, | ) |
| | ) C.A. No. 1:21-cv-00046-MSM-LDA |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SUSAN CORMIER, TREVOR LEFEBVRE, DANIEL MULLEN, TINA GONCALVES, CITY OF PAWTUCKET, and TAMARA WONG, | ) |
| | ) **JURY TRIAL DEMANDED** |
| Defendants. | ) |

**PLAINTIFF'S MOTION *IN LIMINE* NO. 12 TO BAR DEFENDANTS' EXPERT GERALD COYNE'S IMPROPER OPINIONS**

Plaintiff, JOAO MONTEIRO, respectfully moves *in limine* for an order barring the Defendants from eliciting certain opinions from their proffered expert Gerald Coyne. In support, Plaintiff states as follows:

**Introduction**

Defendants proffer purported expert Gerald Coyne, whose opinions would effectively tell the jury that they need not deliberate about this case because Defendants' actions were proper in seeking, and obtaining, an arrest warrant for Mr. Monteiro.

There are three primary problems with Coyne's opinions. First, although he only professes to be an expert as to prosecutorial practices, he impermissibly opines as to the propriety of actions taken by Detective Cormier with regards to standard police practices. As Coyne is not a police practices expert (nor has he ever served as a police officer), he lacks a foundation to do so. Second, Coyne must be limited from opining as to the existence of probable cause supporting Mr. Monteiro's false arrest, which would be an impermissible legal conclusion. Third and finally, Coyne impermissibly draws conclusions based on no specialized methodology

or analysis, and must be excluded from making any opinions based on his speculative assumptions. Coyne's opinions related to the areas referenced above must be barred at trial as simply telling the jury how to judge the case.

## Discussion

Federal Rules of Evidence 702 and 703 govern the admissibility of expert witness testimony. FED. R. EVID. 702, 703. This standard requires that the expert's "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," and even then, it is only admissible if the testimony is "based on sufficient facts or data" and "the product of reliable principles and methods," which the expert has "reliably applied." FED. R. EVID. 702. The expert's opinion must also be based on "knowledge," not merely "subjective belief or unsupported speculation." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993); *Polaino v. Bayer Corp.*, 122 F. Supp. 2d 63, 66 (D. Mass. 2000) ("Proposed testimony must be supported by appropriate validation – *i.e.* good grounds based on what is known.") (internal quotation marks omitted).

When determining the admissibility of expert testimony, Rule 702 should be read in conjunction with Rule 403. *Daubert,* 509 U.S. at 595 ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses."); *see also Clark v. Edison*, 881 F. Supp. 2d 192, 215 (D. Mass. 2012) ("[T]he Supreme Court noted that Rule 403 may act as a backstop where expert testimony that is admissible under Rule 702 carries a risk of unduly influencing the jury.").

### A. Coyne Should be Barred from Offering Conclusions Outside His Expertise

Coyne provides ample background of his qualifications supporting the expert report disclosed by Defendants in this case. Ex. 1 (Coyne Expert Report) at 1-3. Notably, each of his professional pursuits involved his practice of law. Critically, <u>none</u> of his professional pursuits ever involved being a law enforcement officer. For this reason alone, he should be barred from offering opinions about police practices involved in the Cole investigation.

Expert opinions must assist the jury by providing it with information beyond its knowledge. *See United States v. Shay,* 57 F.3d 126, 132 (1st Cir. 1995) (stating that an expert cannot assist a trier of fact on a particular issue if it could intelligently opine on a particular issue "without enlightenment from those having a specialized understanding"). Many of Coyne's opinions as to police practices lack any foundation whatsoever. Specifically, the following "opinions" do not require Coyne's expert interpretations,[1] as they fall outside his area of expertise:

> It is noted that Ms. Cole disappeared in 1988, and that a very intensive investigation of her disappearance was conducted. It appears that the investigation of her disappearance continued to be active at least through 1996[.] (Ex. 1 at 9);
>
> Although a review by the Attorney General's office was not required, Detective Cormier's submission of her draft affidavit to prosecutors is consistent with best practice. (*Id.* at 10);
>
> . . . I believe that Detective Cormier and the Pawtucket Police Department complied with established procedures by notifying the Attorney General of this homicide investigation, seeking their counsel and advice, and providing the opportunity for the Attorney General to review the basis for an arrest before that arrest was made, including but not limited to the opportunity to edit the affidavit in support of that warrant. (*Id.* at 15);

---

[1] Coyne also makes multiple references to blood in his report (*See* Ex. 1, at 9, 12). The evidence will show only that there was a less sensitive, presumptive test for blood, but later, more thorough testing revealed that there was no blood or semen on the pants. *See* Dkt. 78-3. Without any foundation to opine as to the existence of *any* evidence given his limited review of materials in this case, which did not include any DNA reports, Coyne should be barred from referring to a blood stain on the pants.

> It is clear that in the eyes of the police and the prosecutors, the DNA evidence provided the most critical connection between Mr. Monteiro and Ms. Cole. Without that evidence, there was no other evidence specifically linking the two. (*Id.* at 13).

Coyne offers these opinions well beyond his expertise as a prosecutor, requiring their exclusion from this trial. *Levin v. Dalva Brothers, Inc*., 459 F.3d 68, 78-79 (1st Cir. 2006). First, without any expertise in police practices, he cannot opine to the "very intensive" nature of a police investigation, much less determine what qualifies as an "intensive" investigation. Nor does he have any basis to speak to whether a police investigation was active for eighteen years, without any relative experience into the means by which police conduct (open, or close) their investigations.

Furthermore, Coyne has no basis to opine that Detective Cormier's submission of a draft affidavit to prosecutors is "consistent with best practice" as it pertains to police investigations, *see* Ex. 1 at 10, or that "Detective Cormier and the Pawtucket Police Department complied with established procedures" with regard to any communications they had with the Attorney General's Office. *Id.* at 15. He was not a police officer, nor was he ever employed by the Pawtucket Police Department—or any police department in the nation. While Coyne may draw conclusions as to what a *prosecutor* in Rhode Island would expect to happen in any investigation, he offers no basis to know what practices are determined as "best," as "established," or even recommended within the police department. *Id.* at 10.

Likewise, Coyne lacks a foundation to opine about the importance of DNA evidence "in the eyes of the police" in the Cole investigation. *Id.* at 13. Plaintiff does not object to Coyne's apparent opinions regarding the prosecutorial actions in this case. But the bill must stop there – he cannot insert his analysis of the state of mind of a police officer in the Cole investigation,

much less how they weighed various pieces of evidence. This opinion is nothing more than Coyne's attempts to tell the jury how to weigh the evidence. *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1364 (Fed. Cir. 2008) ("The court, in its role as gatekeeper, must exclude expert testimony that is not reliable and not specialized, and which invades the province of the jury to find facts and that of the court to make ultimate legal conclusions."). A layperson is equal to Coyne to complete this task regarding the above assumptions and opinions he makes, which means the jury does not benefit from Coyne's opinions about the state of evidence well beyond his qualifications.

It has long been well settled that assessing the weight of the evidence is an exclusive jury function. *See Pennant v. Peoria & P. U. Ry. Co.*, 321 U.S. 29, 35 (1944) ("It is the jury… which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusions as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable."). Accordingly, purported expert opinion about how to weigh the evidence is not helpful, but instead intrudes on the province of the jury. *See United States v. Deleon*, No. 07-10277-NMG, 2016 WL 3747487, at *12 (D. Mass. May 9, 2016) ("because the point at issue is a determination of credibility, the issue is not one for which expert testimony was necessary or even appropriate."). That is especially true when there is no expertise involved, such as what Coyne does here regarding police practices. His unsupported speculation about the evidence should be barred.

### B. Coyne Should be Barred from Offering Legal Conclusions about Probable Cause

Coyne also offers impermissible opinions that qualify as legal conclusions, thus exceeding the scope of Rule 702. In his report, he offers that the "legal standard for arrest is

5

probable cause," *see* Ex. 1 at 8, and that he "believe[s] the proper decision was to seek an arrest warrant" for Mr. Monteiro. *Id.* at 15. To the extent that Coyne offers the legal conclusion that probable cause existed for Mr. Monteiro's arrest, he should be barred.

Expert testimony that offers legal conclusions exceeds the scope of Rule 702 and usurps the role of the judge. *See Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99-100 (1st Cir. 1997) ("It is black-letter law that "[i]t is not for witnesses to instruct the jury as to applicable principles of law, but for the judge.'") (citations omitted); *see also In re Zofran (Ondansetron) Products Liability Litigation*, 57 F.4th 327, 340 (1st Cir. 2023) ("Expert testimony on questions of law 'is rarely admissible' because such testimony 'cannot properly assist the trier of fact.'") (citations omitted). Accordingly, "[o]pinions regarding the state of the law, interpretation of statutes or regulations, or the ultimate application of the facts to the law fall outside the purview of expert testimony." *U.S. ex rel. Dyer v. Raytheon Co.*, No. CIV.A. 08-10341-DPW, 2013 WL 5348571, at *13 (D. Mass. Sept. 23, 2013).

Clearly, any opinion by Coyne that Defendants had probable cause to arrest Plaintiff usurps the role of this Court in advising the jury what the legal definition of probable cause is, and also usurps the jury's role of assessing the evidence and applying it to the law. *See Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013) (expert opinion related to the presence of probable cause is an inadmissible legal conclusion); *see also Adams v. New England Scaffolding, Inc.*, No. CV 13-12629-FDS, 2015 WL 9412518, at *7 (D. Mass. Dec. 22, 2015) ("[M]any courts have nonetheless excluded expert testimony concerning a legal conclusion on the ground that it merely seeks to tell the jury what decision to reach."); *Kobie v. Fifthian*, No. 2:12-CV-98-FTM-29DNF, 2014 WL 1652421, at *9 (M.D. Fla. Apr. 23, 2014) (expert's opinion that the defendant acted willfully and maliciously did not aid the jury

as this evaluation was "not beyond the understanding of the average lay person and fails to offer more than what lawyers for the parties can argue in closing arguments.") (internal quotation marks omitted) (citation omitted). The Court in *Adams* laid out precisely why this type of evidence is inadmissible: "[A]though Fed. R. Evid. 704 provides that a witness's opinion need not be excluded merely because it addresses an ultimate issue, many courts have nonetheless excluded testimony concerning a legal conclusion on the ground that it merely seeks to tell the jury what decision to reach." *Adams*, 2015 WL 9412518, at *7. Coyne's probable cause opinion is barred by that very principle—it tells the jury how to decide this case based on his legal analysis that applies the facts to the law.

Probable cause is the paramount issue at trial, and it is within the Court's province to instruct the jury, not Coyne's. It is a quintessential fact question for the jury. *See Mendonca v. City of Providence*, 170 F. Supp. 3d 290, 301 (D. R.I. 2016); *see also Crockett v. Cumberland Coll.*, 316 F.3d 571, 581 (6th Cir. 2003) (noting that the "existence of probable cause is often a question for a fact-finder"). Accordingly, Coyne's personal opinions about probable cause should be excluded.

**C. Coyne Should be Barred from Telling the Jury How to Weigh the Evidence**

Also objectionable are Coyne's many attempts to tell the jury how to weigh the evidence. For instance, Coyne claims:

> Given the high visibility of the underlying crime, and the lengthy period that the Pawtucket Police Department investigated this matter, it is reasonable to assume that there had been some contact between the Pawtucket Police Department and the Office of Attorney General prior to the time that Mr. McBurney spoke with Mr. Healy, although the nature and details of that contact were not known to Mr. Healy. (Ex. 1 at 10);

> The notification occurred with sufficient time for three prosecutors to respond to the Pawtucket Police Department, and to participate collectively in both the review of evidence, and the review of a proposed affidavit in support of an arrest warrant. (*Id*. at 15).

Why Coyne would be needed to tell a jury—who can listen to evidence on communications between police officers and prosecutors, including when those communications took place—what is "reasonable" to assume about contact between police and prosecutors here, or what qualifies as "sufficient time" for the prosecutors in question to review evidence, defies reason. Those are textbook jury determinations. *See Sundance, Inc.*, 550 F.3d at 1364 ("The court . . . must exclude expert testimony . . . which invades the province of the jury to find facts and that of the court to make ultimate legal conclusions."). No expert is needed to assist the jury in concluding that certain people talked to one another or that a number of hours did or did not pass. The jury can listen to the evidence itself, and draw necessary conclusions.

Furthermore, Coyne baldly speculates about Plaintiff's state of mind, without any analysis or expertise, to conclude that Mr. Monteiro "had a motivation to flee the jurisdiction had he so chosen, or to begin to discuss the matter with others, potentially tainting their subsequent testimony." *Id.* at 15. It will not help the jury to hear Coyne testify about Plaintiff's motivations to "flee" for a purported crime with which he had nothing to do. *Levin v. Dalva Bros., Inc.*, 459 F.3d 68, 78 (1st Cir. 2006) ("[A] district court acts properly by excluding opinions that are beyond the witness's expertise[.]"). His opinions are based entirely on his own guesses. They should therefore be barred.

WHEREFORE, Plaintiff respectfully requests that the Court bar Coyne from testifying about: (1) the propriety of Defendants' actions with regard to police practices and procedures; (2) legal opinions—specifically his opinion that Defendants had probable cause to arrest Plaintiff; and (3) his attempts to tell the jury how to weigh the evidence, including as to contact with the prosecutor's office, the sufficiency of any review (which the jury alone can determine), and Plaintiff's state of mind.

                                                      RESPECTFULLY SUBMITTED,

                                                            **JOAO MONTEIRO**

                    BY:    <u>Mark Loevy-Reyes</u>
                             *One of Plaintiff's Attorneys*

*Attorneys for Plaintiff*
Mark Loevy-Reyes*
Meg Gould*
Loevy & Loevy
398 Columbus Avenue, #294
Boston, MA 02116
Ph: (312) 243-5900
Fax: (312) 243-5902
mark@loevy.com

Jon Loevy*
Megan Pierce*
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, Illinois 60607
(312) 243-5900
mark@loevy.com
*Admitted *pro hac vice*

William Devine
D'AMICO BURCHFIELD, LLP
536 Avenue
Providence, RI 02909
(401) 490-4803
WVD@dblawri.com

## CERTIFICATE OF SERVICE

I, Mark Loevy-Reyes, an attorney, hereby certify that on November 19, 2024, I filed the foregoing motion *in limine* using the Court's CM/ECF system, which effected service on all counsel of record.

/s/ Mark Loevy-Reyes
*One of Plaintiff's Attorneys*
